For the benefit, Ms. Solomon, of you and other counsel today, the lighting system will show green until you begin to get into your rebuttal time, at which point it will turn yellow. You have reserved five minutes for rebuttal, I believe, and then when you've exhausted your full time, it will turn red. May it please the Court, my name is Arielle Solomon, I represent the petitioner, Mr. Richard Erickson, and his appeal from the MSPB decision, which erroneously affirmed the Postal Service decision to remove him from employment while he was still serving on military duty. This is really a very simple case. Mr. Erickson was employed with the Postal Service, he left, he served on active military duty. During that time period, he was contacted by the Postal Service and told to make a decision about whether or not he intended to return. In order to successfully establish a USARA violation, Mr. Erickson has to allege three factors. The first is that of military service, which he unambiguously does. The second is that he was denied a benefit of employment, which he also unambiguously does. Essentially, he was removed from employment and thereby he was not permitted the protections engendered by 38 U.S.C. 4311, which provides for the retention of employment for an individual covered by USARA and serving on active military duty. Ms. Solomon, Mr. Erickson completed his military service on December 31st of 2005, and he had 90 days to reapply from that time for the position. What evidence was submitted below that he actually did reapply during that period? Mr. Erickson indicated that he had contacted the agency and he had been in contact with his union to try and seek reemployment, but the issue in this case is really twofold. The first is that... But what evidence was there that he actually contacted the agency? Did he submit any evidence of a call, of a memo communication, an email communication? As indicated in the administrative judge's initial decision, he stated candidly in a deposition that he had contacted the agency. So by a deposition which was introduced into record at the board level, Mr. Erickson requested reemployment. And did that testimony make clear that when he contacted the agency, he did request reemployment? The deposition made clear that only that he had contacted and expressed a concern that he was removed from employment and didn't think it was justified because he was covered under USERRA. So he could... Did he go beyond that and ask to actually be reemployed? It was the petitioner's position that he didn't have a position to be reemployed to. He was terminated in 2000. Therefore, it seemed as though it would have been for naught to request reemployment. He did complain that he was actually removed from service while he was protected from the uniformed services, and the agency maintained that he had been properly removed by virtue of exceeding the five-year statutory cap. It's Mr. Erickson's position that at the time of the removal, he was still covered under USERRA, and he submitted various orders and evidence at the board level which indicated that he fell within the exemptions of 4312, which enumerates roughly seven exemptions, and a significant portion of his time was covered under those exemptions, under the cap. Moreover, the time period that he served on military duty after he was removed was improperly considered when the board determined whether or not the agency had violated USERRA by virtue of the fact that he simply remained on military duty to mitigate the damages that he had incurred after the Postal Service terminated his employment. I think the record reflects that he served a total of 23 years in the military. Is that right? In totality, that's correct. Was he retired out of the military? That's correct. And that happened in 2005? Correct. What is your view as to the application of the five-year limit, which I think appears in 4312, with respect to 4311, and let me explain what I mean by that. Do you believe that if someone is gone for five years, that 4311, I understand that that's not the case in this instance, at least as of 2000, but if someone were gone for five years, would 4311 not apply to them? Your Honor's question is contingent on other factors, I would think. For example, if someone does not intend to return to civilian employment, then for all intents and purposes, 4311 would not cover that individual. Well, let's take someone who doesn't make clear whether they do intend or not, but they simply depart for, let's say, six years, and let's set aside any exceptions to the period. They're gone for six years. They wouldn't have reemployment rights, I take it, under 4312, correct? If there are no exemptions, that's correct. Right, okay. Now, do they nonetheless have rights under 4311? It wasn't clear to me from your brief whether you were making an argument that 4311 would apply even if 4312 did not. If 4311 would apply even if 4312 would not, because if the individual, for example, Mr. Erickson, was removed from employment prior to the expiration of his six years, there was a time period that he was still covered by USERRA and could have foreseeably requested his position. Well, wait, wait, wait. You've lost me there. My hypothetical is, and I'm not talking about Mr. Erickson's case now, but just a hypothetical, is that the individual is gone for long enough, five years, not counting exceptions. He's gone for long enough that he wouldn't have reemployment rights under 4312, okay? All right. Does he nonetheless have anti-discrimination rights under 4311? Or does 4311 anti-discrimination rights, are they coterminous with the 4312 reemployment rights in time? 4311 is contingent on 4312 by virtue of the fact that USERRA only applies to non-career military employees. So if someone exceeds the five-year cap, then arguably they're not covered under USERRA by virtue of the fact that they're not deemed to be a civilian employee and they haven't complied with the act. However, in the case of Mr. Erickson, though, regardless of the exceptions, well, he was inclusive of 4312 and the exceptions. He was covered by USERRA at the time of his removal. The agency submitted a letter to him indicating that he had exceeded the five-year cap, and they did that erroneously. So after being informed that he was terminated from employment, he remained on military service. He did that to mitigate his damages. So there was no position for him to ever reapply to. That doesn't obviate the fact that the Postal Service still violated 4311 while Mr. Erickson was still covered by the act, and he was harmed by that. He has been prevented from obtaining alternative employment with other federal agencies by virtue of the prior termination, as reflected on his F50. He has been precluded from readily obtaining alternative employment positions in the private sector. So the simple act of removing him while he was covered by USERRA has caused significant harm to him. So whether or not he was entitled to later reemployment does not prevent this court from finding that the Postal Service violated USERRA in the first instance in 2000 when they fired him and he was covered by the act. And what year was that violated? Your allegation is 2005 or 2000? In 2000. In 2000. Correct. The agency proposed his removal on February 16th of 2000. It was effectuated on April 7th of 2000, and during that time period he hadn't exceeded the cap. Moreover, this isn't a situation like this court found in Woodman v. OPM. This is a situation where they knew when Mr. Erickson was going to be returning because he had had a conversation with a human resources official, as reflected in the respondent's brief and in the respondent's appendix, and they were able to identify when his orders expired, which were in September of 2001. He indicated an intention of staying on military duty until that order expired. So this isn't a case where, as in Woodman, Mr. Erickson was on military service for an extended period of time and they just were not aware of if or when he would ever return. Well, now, the record, and I know the portion of the record you're referring to, but I did not understand that portion of the record to have constituted a representation that he would come back in 2001, but rather that he was already signed up through 2001 without any representation that I could see in the record. You can correct me if I'm wrong in this, that he indeed was coming back after that commitment terminated. Is there something in the record to that effect? It's the petitioner's position that even if that is not reflected unambiguously in the record. Well, is it or not? It appears that he indicated that he would be on military duty until his military orders expired, and there's nothing in the record that says, I'm going to come back on October 15th. Okay, I didn't think so. But isn't it even beyond that? Didn't he tell the human resources person that he liked military service better? He was going to voluntarily reenlist again? He indicated to the human resources official that he appreciated the way the military treated him better than the Postal Service, who was contacting him while on military service and telling him to make a decision to come back while he was being ordered on active military duty or lose his job. So to the extent that he had to unambiguously indicate a date certain that he had to return from military service to be protected by USERRA, the petitioner would vehemently oppose that view because USERRA indicates, and there's also ample case law to indicate, that it's very difficult for a reservist to waive their USERRA rights, which arguably don't even vest until their return from military service.  You say unambiguously. Does he even have to give some ambiguous intentions that he wants to return? Because I don't see that in the record. At 847, he indicated he intended to stay at, I'm sorry, the appendix brief. Excuse me, the respondent's appendix indicates that the decision that the human resources official made to propose Mr. Erickson's removal or recommended reflects that, yes, he was on military service, and, yes, he intended to be on military service until his order expired. And then after being informed that he had to make a decision, Mr. Erickson indicated that he would have to consult with an attorney, that he disagreed, that USERRA, he stated incorrectly that USERRA provides exemptions unless he is continuously on active military duty rather than in aggregate. Basically he misstated or was under the assumption that he had to be gone for five years, not in totality but consecutively. What impact should his voluntarily reenlisting have on the court's decision? Very little. Essentially, Mr. Erickson has indicated that he had an intention to remain employed with the military. His service with the military was on a part-time basis. It wasn't always full. He was on active military duty for 14 years, full-time, continuously. That is not the case with Mr. Erickson. It may have been part-time, but he still, I think he worked two days during an almost five-year period at the post office. And largely that time was exempted from the five-year cap. And I see that I'm into my rebuttal time. Well, we've asked you a lot of questions, and we will reserve your full rebuttal time. But let me ask you to add further questioning if I could. Does, in your view, if, and again I'm troubled by the relationship between 4311 and 4312, so that's what this question is directed at. In your view, if someone, there is a limited period of time in which someone can request reemployment. And 90 days except if there's injury or the person is hospitalized or whatever. If you have someone who has a viable claim of discrimination under 4311, but does not request reemployment during the period, the 90-day period, I take it you would say that they don't waive their discrimination claim? That's correct. Mr. Erickson has two claims. One is for an improper removal, and two is for a failure to reemploy. So that the two, 4311 and 4312, could be separated in that manner. But you're not saying that there is an automatic reemployment rate. Mr. Erickson is required to meet the requirements of USERRA when requesting reemployment. So he has to meet those prongs, one of which is a statutory cap of not being connected to military duty in excess of five years of timely requesting reemployment upon his return, which if it exceeds 180 days would require an application within 90 days. But what is the difference in the remedy that would be available if we were to find, for example, there's a 4311 violation but not a 4312 violation? A 4311 violation would essentially, if this court were inclined to find a violation, Mr. Erickson would step back into the position he would have been but for the agency's violation of 4311. And get back pay all the way up until today? No. I think it would be cut off at the time of his removal because even if he's not entitled to back pay, he was still harmed by the Postal Service's violation. They classified his absence as misconduct, and USERRA was expressly enacted for the sole purpose of preventing that type of situation. So Mr. Erickson has been harmed by virtue of their classification of his absence while covered under the Act as misconduct and now has to report it to all future employers and is precluded virtually unambiguously from getting future federal employment. Let me make sure I understand because I'm a little confused now about your answer to the remedy question. I think you said that he would get relief up to the time of his removal in 2000? This court can find a violation in 2000. Right. Would not necessarily indicate he's entitled to back pay but still find that the Postal Service should not have classified his, should not have actually removed him. So the court could order, for example, that the SF-50 be adjusted. Okay. And if the SF-50 were adjusted, but your position still is that he should not have been told at that point, no matter how nice the language of the SF-50 might be adjusted to reflect, he should not have been told you can't come back. So he would have presumably been able to come back at any point thereafter? He would have been able to come back at some point. And the difficulty in Mr. Erickson's position is that he remained on active military duty until 2005 because he simply did not have a position to come back to. He was already on active military duty. He was obtaining a paycheck from the military. So he continued to get that paycheck. He didn't come back early to occupy a status of unemployment. But for the agency's termination of him, he may very well have made a timely application after he returned from military service in 2001. So that sounds like you're saying that he's prejudiced all the way through at least 2005 and perhaps beyond by the termination in 2000. Yes, he is. And therefore, I would think you would be arguing that he's entitled to back pay throughout that period. Would you not? Yes, he would. He would. And up until when? Today? Up until today. He would be entitled to back pay. Would he have a right to be reinstated in his original position under USERRA, or does that require the post office to maintain that position available for the person that's covered by USERRA? Not that they have to— Under 4311. 4311 requires reemployment. What they do with the position in the interim is they don't have to hold it open. They have to reemploy him. So he would be entitled— In the same position. Into the same position. No, not into the same position. He would step back onto the seniority escalator that he would have had but for his military service. So he does not step back into the same position he occupied prior to the time of his removal or his departure from military service. He would step back onto the career escalator principle as articulated by the Supreme Court in Fishgold in the same level that he would have occupied but for his military furlough. Okay. Thank you. We'll reserve you for a rebuttal time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. The judgment of the MSPB should be affirmed. The factual finding that Mr. Erickson abandoned his civilian career in favor of a military one is supported by substantial evidence. That is your lead argument in your brief, and you've led with it here. But what indicates to you, if anything, that the full Board embraced that rationale, which was the rationale, as I read the initial decision, but does not seem to appear in the full Board's opinion? The full Board affirmed the decision of the administrative judge as modified by the order, and this Court has said before, for example, in Barnes v. Office of Personnel Management, which we cited too in our brief, that unless there's a different factual finding made by the full Board that would conflict with a factual finding made by the administrative judge, those factual findings stand.  Well, certainly here there's nothing to indicate that the full Board disagreed with the administrative judge's conclusion that Mr. Erickson abandoned his civilian career. Well, I notice in the first paragraph of the full Board's opinion, the full Board says, for the reasons set forth below, which, and then goes on to say we deny the petition review grant that the agency's cross-petition and affirm as modified. But the reasons set forth below do not include the abandonment rationale, or do you think that they do? We think that the factual findings that were made by the, first of all, of course, this Court may affirm the Board's decision on any legal basis so long as the factual findings. You think the Chenery Doctrine doesn't apply here? No, and this Court has said in Killick that as long as no new factual findings need to be made, this Court may affirm the decision on any basis. So we certainly believe that both the administrative judge's decision on abandonment, which was not affirmatively disposed of by the full Board, the full Board at least did not explicitly disagree with that legal conclusion or the factual findings. But you say that as long as no new factual findings need to be made, but doesn't that assume that the full Board has adopted the factual findings? Because if it's the case that the full Board's opinion simply washes the ID out, then the full Board hasn't made factual findings necessary and pertinent, has it, to the abandonment argument. Right. I think the fact that the full Board said that they're affirming the decision, they're not making different factual findings which are conflicting with the administrative judge's factual findings. Right, but there's a middle ground, which is that they may simply not be adopting the factual findings of the initial decision. And if that's true, then unless it's correct that all factual findings not disclaimed are thereby adopted, then we don't have factual findings before us for review from the full Board, right? If that were the law, we believe that what the court said in Barnes, and it's on page 10 of our brief, that the full Board adopts the initial decision and it also adopts the factual findings unless there's some conflicting... If it adopts the initial decision, yeah. Right. What if it amended? Well, and that's what happened. By affirming the decision as modified, it adopted the administrative judge's factual findings. Madam, we're certainly happy to present the court with further explanation on that if that's a concern to the court. I'm afraid that the Barnes case is the only one I can cite to you right now that would address that particular scenario. If, in fact, the I.D. was amended by the Board and it amended it right on some of the factual determinations and did not accept them, can we reinstate the I.D.'s factual determination? No. If the full Board made factual findings that were conflicting with and not consistent with the administrative judge's factual findings, then this court would and we would be subject to follow the full Board's factual findings. Because it's the Board's determination which is before us, not the I.D.? Correct. So we can't reinstate the I.D. over the full Board's determination of adopting some and rejecting some of the others? Well, this court can certainly affirm the legal conclusion that it was reached that these facts support a finding of abandonment. The court certainly not precluded from finding it. There's nothing in the full Board's decision which conflicts with a finding of abandonment. The full Board simply said we disagree to the extent that this would be a prima facie case of discrimination. We think that the agency had a nondiscriminatory purpose in separating Mr. Erickson because it needed this position to be filled and that basically the full Board followed the more traditional she-hand burden-shifting analysis and the administrative judge went about it in a different way and I looked at it in terms of no, he's not covered by USERRA at all because he's abandoned his civilian career. There's nothing inconsistent with both of those standing together. Well, the full Board decision seems to imply that they relied more on the failure to request timely reinstatement than any other action that would be required. Well, the administrative judge didn't address the reemployment issue at all, arguably because if he abandoned his career, he didn't have any reemployment rights. In fact, that was one of the reasons why the Postal Service cross-petitioned for review was to get a ruling on that reemployment issue, which the administrative judge did not explicitly address. So the full Board did address, and we certainly would support and are asking this court to affirm the full Board on the reemployment issue because we believe that is a correct conclusion that was not addressed by the administrative judge. But to the extent that we're talking about the 4311, the 2000 separation, we believe that that could be supported by the administrative judge's conclusion as well. But it's not the same facts, though, is it? Well, I guess maybe the same facts of abandonment certainly could support both conclusions. The reemployment is certainly also supported. That decision is certainly also supported by the fact that he never asked to be reemployed within 90 days, and also arguably by 2005 he had exceeded the five-year limit on reemployment rights, and those are certainly two positions we think are very strong and would support an affirmance on the reemployment issue. Well, but there were allegations in the record to the effect that there was a 90-day request as required by USERRA for reemployment in 2005. And in on page A17 in the full Board's decision, the full Board said that Mr. Erickson admitted that he did not request reemployment within 90 days. Requiring the completion of his full monetary duty. Yes. And to the extent that there were allegations that he requested reemployment or made inquiries regarding reemployment prior to that date, the agency submitted five affidavits of various human resources personnel who all averred that they had never received any inquiry from him. And as a factual finding that is supported by the full Board's conclusion that he did not make a request for reemployment is supported. What about his argument that his counsel made a formal request for reemployment? Well, first of all, that was well outside the 90 days. If we're asking that, and second, we believe that an appeal to the MSPB alleging that the Postal Service failed to reemploy him does not constitute an application for reemployment. It's simply not the same thing. I am, I have to confess, troubled by the discrimination rationale applied by the Board. As I understand it, the Board said, well, this wasn't discrimination because of military service or discrimination because somebody left for military service. This is discrimination based on absence. That sounds like verbal legitimacy to me. I mean, if you were to leave to go join the tennis circuit, leave your job, presumably you'd be fired in pretty short order for not showing up to work. But I thought the whole purpose of the ACERA, including the anti-discrimination provision, is to ensure that people can leave. I mean, leaving is exactly what you do to do military service. How can it be the case that it's not discrimination under 4311 as long as you use their absence as the basis for finding lack of discrimination? It sounds strange. Right. Two points. First, simply because he left on military service. Congress could not have intended that an employer be required to leave a position and not be able to fill that position with a new employee during the absence. Now, I want to be very, very clear that the employee is absolutely entitled to the reemployment rights under 4312 once he makes that application for reemployment. He is absolutely entitled to be reemployed. Right, and he gets the position back. So the employer can fill the position, but then they've got to open a new position when he comes back. Right. But what's happening here is, as the Postal Service stated very clearly on page 53, they couldn't fill that position while he would still remain on his roles. Couldn't the Postal Service, under this rationale, always use military service absence as a basis and claim that it's non-discriminatory if they remove someone for that? Because essentially what the full board is saying is that removal because of absences for military service is non-discriminatory in an appropriate basis to remove. Wouldn't that apply to everyone in military service whose absence for any amount of time? No, Your Honor. I think we need to limit this to the facts of this particular case where Mr. Erickson had already been gone for three years, had only worked two days there, had not indicated, and again on page 67 there's the affidavit of the human resources official who said that at no time did Mr. Erickson state that he intended to return to the Postal Service. But that's a separate issue than the discrimination in the person. When we're talking about long extended absences without foreseeable end, make it very clear, even if Mr. Erickson had resigned, if he had been separated, if he had just been placed on leave of absence, all the benefits of employment that he has and nor at the time he seeks reemployment. So even if the removal, the separation in 2000 had been incorrect, and we think that it's not, but even if this Court were to find that it was incorrect, the only benefit that Mr. Erickson would obtain would be the right of reemployment, which he already had by virtue of 4312. There's no, and to address this Court's concern about the remedy, even if this Court were to find that the separation in 2000 was improper, the result would be that he would have been deemed to have been on a leave of absence or a furlough. He still, by 4312, would have been required to make an application within 90 days of his leaving military service in 2005, which he did not do. So there's no harm to him. Assuming that he did, let's say that hypothetically, if he had filed a notice within the 90 days and the position was filled, the post office would still need to reemploy that particular person. Absolutely. And if the position was no longer in the organization, what happens at that point? Does the individual still have rights of employment, even though the post office has reorganized that position from its structure, from its personnel structure? 4312 absolutely gives the absolute right to reemployment. Now, if there's a situation where that facility is closed or if it would be impossible or a hardship for the employer to reemploy him, there may be other situations. But the Postal Service would have been obligated to find him a position within, with the same seniority and benefits that he would have been entitled to had he been considered to be on leave that entire time. So if, in fact, the notice was given within 90 days, directly or indirectly by his lawyer, then that would apply, assuming that the – Assuming that the application met, you know, was to somebody in the Postal Service who had the ability to do something about it, like a human resources official or a supervisor or somebody like that. If there had been an application made within 90 days – Whether it was done by Mr. Erickson or his lawyer. I'm not sure that that difference would have been made. I think that the only application we have here by his lawyer was by making an appeal to the MSPB, never to the Postal Service itself. Was there any evidence that the union took any action for reemployment on behalf of Mr. Erickson? It does not appear that the union ever filed a grievance regarding the removal, no. Let me ask you, returning to the discrimination point, and you moved quickly to the facts of this case and the lengthy period of time and so forth, but I want to focus in on the rationale employed by the Board and see the extent to which you embrace that rationale as applied more generally. Because as I read the Board, it's a pretty broad ruling that removal for absence is not discrimination because of military service. Does the Department of Justice stand behind that proposition as stated? That would be extraordinarily broad, Your Honor, and I don't think you would be – You don't think that's exactly what the Board has said? No, the Board has said that an absence – an extended absence without – a prolonged absence without foreseeable end. And then the Board pointed to the fact that he had been continuously absent for three years and that he had, importantly, had expressed at that time an inclination not to return to the civilian position in the foreseeable future. It would be an entirely different thing if an employee were on military service and maybe was away for years but had said – but had expressed their intention to return. But again, that wouldn't mean necessarily that the employer is required to maintain them in a certain employment status. Well, I don't think that's – that doesn't really matter, right, what the employer decides to do about whether technically they refer to the jobs being filled but subject to being reopened or whether it remains technically open. Right. As long as the job is available to the serviceman when he returns. Absolutely. And we stand by that. All right, all right. But here's the language that troubled me from the Board's opinion, and I'm reading from page four of the full Board's opinion. The agency's removal notice makes clear that the real reason for the appellant's removal was his absence regardless of its cause. And they say that is not discrimination as long as it's the absence, not the military nexus. But you don't think that's correct? I think that that's a very fine line to walk, Your Honor, and I agree that that's a difficult position to take. I think that this could be – But I'm asking you, do you take it? I don't think I – I'm speaking for the Department of Justice and for, I guess in this case, the Postal Service. I don't think we could say as a blanket rule that absence would always be a permissible non-discriminatory reason. But, again, these discrimination cases are always contingent on the facts of the particular case just as abandonment is a voice. Right, but it helps to have – to start with a legal theory that will stand up and then you apply the facts through the legal theory. I'm just questioning whether this legal theory articulated by the Board is a fundamentally flawed legal theory of military discrimination. And here's my concern. If this is a correct proposition that it seems to me we've reduced 4311 to cases in which the agency says, you know what, we can't stand those military guys. They're just – people coming back from the military are anathema. Anybody that comes back from the military, whether they've gone a week or whether they've gone five years, find a way to get rid of them. That's clearly not all that Congress had in mind with 4311. Wouldn't you agree? No, I mean, 4311 extends a large number of actions that employers – including not giving people rights when they come back from the service, right? 4312 says you have a right to reemployment, and we stand by that, again, whether or not the removal was not for the right reason in 2000. The benefits that inure to Mr. Erickson, whether or not he was on leave, whether or not he resigned, whether or not he separated, his benefits come when he returns and applies for reemployment. And he did not do that. And he dropped the ball, is your point. Yes. And I do want to point out that Mr. – and we did make this point in our brief – that Mr. Erickson still has the right to request reemployment with the Postal Service. He just doesn't have the automatic reemployment rights that 4312 provides. He would still be required to go through the same reemployment procedures that any former employee would. But he certainly, to this day, would be permitted to request reemployment. And the allegations that in his brief – As do I. Correct. His right is no greater than yours or mine. Well, as a former employee, he has the same rights as any other former employee, and he would be subject to the rules and regulations. I presume his military service would also give him some kind of an advantage at that point? Right. He would be subject to that. As a veteran? Yes, Your Honor. That would not be taken away from him? No, absolutely not, Your Honor. Okay. Thank you, Your Honor. I will let Ms. Solomon, if you have anything. May it please the Court, just to – as a matter of clarification, with regard to 4311 and 4312. Again, it's the petitioner's assertion that 4311 was violated by virtue of his removal. The possible remedy for that is not necessarily monetary. It's not necessarily back pay. It could be in terms of pension credits. It could be in terms of seniority. The issue of 4312 with regard to reemployment, it's the petitioner's assertion that that aspect of the record is somewhat ambiguous and it would be the petitioner's recommendation to remand the case or further development on the record. For example, the respondent's brief at Appendix A-104 and A-105 seemed to indicate that Mr. Erickson did indeed submit a grievance, that he did indeed complain about the fact that he was removed from employment, and it was not at all clear to him that he had reemployment rights after he'd been terminated in 2000. Mr. Erickson has been awarded the Purple Heart, the Bronze Star. He has come back after being removed from employment and has attempted very diligently to obtain his position back in the Postal Service. He is exactly the type of petitioner that Congress envisioned when enacting USERRA. Any fine points with regard to the time calculations cannot possibly obviate the fact that he was discriminated against in 2000 because he was removed by virtue of his military service, not absence because absence is necessitated by the military service. So the full Board's decision is unambiguously incorrect. This Court can vacate the Board's decision with respect to the removal and the petitioner would request a remand on the issue of the reinstatement. What is your position with respect to the issue that Ms. Hogan was discussing with us as to whether the full Board's opinion should be read as incorporating the initial decision rationale regarding abandonment? The full Board amended and modified the initial decision. Correct. Affirmed and modified. Affirmed and modified. It wasn't at all clear whether or not, or how they were necessarily interpreting the initial decision, how they were applying it. It appeared that they were mixing the two claims, the 4311 and the 4312 claims. And for that reason, the full Board decision reads in a manner that would create precedent that permits agencies to remove appellants by virtue of their absence and by virtue of their absence for military services. It would create the type of precedent that would prohibit any civilian employee who leaves from the military and comes back who is terminated from appealing to the MSPB for reinstatement. I can certainly understand your argument that that's problematical. But Ms. Hogan's argument that she began with, both in her brief and here, was abandonment. Now, the question that I have is whether that abandonment issue is before us in the sense that the full Board embraced not only the rationale that it expressed, but also the rationale that is present in the initial decision by the administrative judge. The petitioner would argue that the MSPB did not embrace the abandonment issue with respect to the actual reemployment. He wasn't entitled to reemployment by virtue of the fact that he remained on military service for an extended period of time and, therefore, was not covered by USERRA. It was not clear from the full Board's decision whether or not that same reasoning applied to the 4311 claim. Okay. So the petitioner would simply conclude by reiterating that this Court can vacate the MSPB's decision by virtue of the fact that Mr. Erickson has successfully established he was on military leave, he was a civilian employee, that while he was on military leave, he was denied a benefit employment when he was terminated from the Postal Service and also denied reemployment rights. Thank you. Thank you very much. And both counsel, the case is submitted.